JONES et al. v. MISSOURI-EDISON ELECTRIC CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1916.)

No. 4283.

1. CORPORATIONS ☞584—IMPROPER CONSOLIDATION—VALUE OF STOCK.

Where the holders of the majority of the shares of two corporations improperly consolidated them, and the new company did not immediately declare dividends, that fact is not conclusive as to the value of the properties consolidated, and the master appointed to ascertain such value in a suit by the minority shareholders should not proceed by a capitalization on the first dividend declared after consolidation, but should consider all other competent evidence.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ☞584.]

2. CORPORATIONS ☞584—IMPROPER CONSOLIDATION—VALUE OF STOCK.

In determining the value of corporate property which was consolidated, the master should not reject evidence as to the value of the properties consolidated, because it was not sufficient alone to show value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ☞584.]

3. CORPORATIONS ☞584—CONSOLIDATION—IMPROPER CONSOLIDATION.

Where the holders of a majority of the shares of two corporations consolidated such companies in violation of the rights of the minority shareholders, the minority shareholders, upon recovering the value of their shares, are entitled only to interest at the statutory rate from the date of the improper consolidation, without annual stops in computation, and are not entitled to counsel fees necessarily expended in their suit, for their recovery does not inure to the benefit of the corporation in which they held shares, although such fees may be determined and paid out of the recovery, and the surplus distributed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ☞584.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Morgan Jones and others against the Missouri-Edison Electric Company and others. From the decree, plaintiffs appeal. Reversed and remanded, with directions.

Eleneious Smith, of Los Angeles, Cal., David T. Bomar, of Ft. Worth, Tex., and Ford W. Thompson, of St. Louis, Mo. (Douglas W. Robert and William B. Thompson, both of St. Louis, Mo., on the briefs), for appellants.

Theodore Rassieur, of St. Louis, Mo., and C. M. Rosecrantz, of New York City (H. S. Priest and B. Schnurmacher, both of St. Louis, Mo., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is an appeal by holders of 3179 shares of preferred stock of the Missouri-Edison Electric Company from a decree of relief from an inequitable consolidation of their company with the Union Electric Light & Power Company effected by an abuse of power by majority stockholders who had control of both companies. For brevity the constituent companies have been called the "Edison Company" and the "Union Company No. 1," and the consolidated company, the "Union Company No. 2." We shall adopt those designations. The history of the litigation will be found in Jones v. Missouri-Edison Electric Co. (C. C.) 135 Fed. 153; 75 C. C. A. 631, 144 Fed. 765; 117 C. C. A. 442, 199 Fed. 64; 122 C. C. A. 247, 203 Fed. 945—and need not be repeated here.

[1] On a former appeal it was held that in addition to a fair adjustment of the relative values of the properties, tangible and intangible, of the two constituent companies, the appellants as minority stockholders of the Edison Company were entitled to share in the accession of value resulting from the consolidation and in the potential value of a power installation known as the "Ashley street plant." The decree of the trial court was reversed and the cause was remanded—

"with instructions to ascertain the value of the property of Union Company No. 2 immediately after its consolidation, to assign 43 per cent. of that value to the Edison Company, to find the value of the stock of the appellants on that basis, and to enter a decree to rehabilitate the Edison Company, or that the appellants have a lien upon the property of Union Company No. 2 for the value of their stock and interest thereon from the date of the consolidation, and the costs of this suit, and that that lien be foreclosed, or for such other permissible relief in equity as to the court below shall seem meet and effective to satisfy the claim of the appellants, unless within a short day, named by the court, the defendants shall pay to the appellants the said value of their stock, and interest thereon from the date of the consolidation, and the costs of this suit."

The decree now before us was rendered upon a confirmation of the report of a master to whom the matters were referred. It was conceded that the rehabilitation of the Edison Company was practically impossible. All that remained was to give appellants a money decree with means for enforcing it, also incidentally to ascertain and make

suitable provision for the costs and expenses of the litigation. The consolidation occurred September 9, 1903, but as the business was in a transitional condition for some months afterwards and the consolidated company, Union Company No. 2, opened its books December 31, 1903, the latter date was taken as a time for convenient figuring. The master found the value of the property of Union Company No. 2 on December 31, 1903, to be $5,121,772.23, of which he assigned 43 per cent., or $2,202,362.05, to the Edison Company according to the mandate of this court. The capital stock of the Edison Company was $4,-000,000, consisting of 20,000 shares of preferred and an equal amount of common. The master then found the relative values of these shares as 2 to 1, and on that basis set off $1,468,241.36 of the Edison value to its preferred stock and determined that the 3,179 shares owned by appellants were worth $73.41 each. On that value he allowed them simple interest at 6 per cent. per annum from December 31, 1903. He also found the expenses of appellants' counsel and the value of their services. The latter was fixed with regard to the amount of actual recovery, instead of the entire value assigned to the Edison Company. The fees and expenses were charged upon the fund recovered, so that in the end the appellants would contribute thereto ratably.

The value of the property of Union Company No. 2 on December 31, 1903, was found in this way: The net income of the company for 1907, after deducting all operating expenses, fixed charges, $176,780.-77 for depreciation, taxes, and interest, amounted to $469,951.92. The net income was then capitalized on a 7 per cent. basis, and the result, $6,713,598.37, was taken as the value December 31, 1907, of the equity in the incumbered consolidated properties. This amount was discounted back four years to December 31, 1903, at the same rate, 7 per cent., with annual rests. The result was $5,121,772.23, of which, as already noted, 43 per cent. was assigned to the Edison Company. The net income for 1907 was taken to start with, because, as believed, more likely to reflect intangible and potential values of the consolidation and the Ashley street plant, and also because the financial results of later years were complicated by the acquisition of other properties and further additions to capital.

The report of the master is an excellent one, but we think he erred in selecting a single method in ascertaining value, to the exclusion of a great mass of other evidence upon the subject. Moreover, the method selected was not altogether correctly applied. It is true that the first dividend upon the stock of Union Company No. 2 was not declared until 1907, but the discounting of the capitalized net income of that year back to 1903 implied an absence of net income for the years 1904, 1905, and 1906. The books of the company for those three years showed net income passed to surplus aggregating $642,112.54 after all deductions including $300,000 for depreciation were charged out. That dividends are not paid during the early years of a venture is frequently a choice of financial policies, without much, certainly without controlling, significance as to the value of the stock or of the property it represents.; and during the formative or adjusting period stock is often recognized as having substantial value, even without net earnings

from the business. The theory adopted of discounting regardless of intervening factors and conditions, if pursued far, could be made to result in an initial value near the vanishing point, although the enterprise was being developed or constantly strengthened by a wise and conservative management.

[2] The very nature of the case precludes proof of value and damage with the precision of a mathematical computation. It is one which calls for the exercise of judgment upon consideration of every relevant evidential fact or circumstance. As we have said, there was a great mass of evidence upon the value of the property of Union Company No. 2, in which appellants had legal shares. To recite all of it would be unnecessarily tedious. There was error in subjecting each item to the test of self-sufficiency, instead of considering it as part of a whole. Evidence was received of the values of the separate properties of the constituent companies; the declaration in the articles of consolidation that the capital stock of $10,000,000 was fully paid by the combined properties, though qualified later by the retention of part of the stock in the treasury; a series of statements of values by a company that was an efficient actor in the consolidation and heavily interested in the stocks of the constituent and consolidated companies; representations by Union Company No. 2 of paid-up value in an instrument to increase its capitalization presented to a public official; the borrowing of $3,000,000, with an equal amount of stock as sole collateral, and an agreement by a responsible party to purchase the stock at par; an exhaustive report of capitalization, properties, values, earnings, and expenses, prepared by expert valuers and accountants, and adopted, sworn to, and submitted by Union Company No. 2 to a municipal public service commission in a matter of rates, included in which is a showing as of January 1, 1904; expert estimates based on earnings shown by the books; values extended on the records of Union Company No. 2 shortly after the consolidation; sales of and subscriptions to stock; exchange of stock for stock in a holding company, the market value of the latter, and the basis of exchange; testimony of the manager of the syndicate, which with an associate owned nearly all the stock of the constituent companies and effected the consolidation, that at the time of the consolidation the $5,850,000 of stock of Union Company No. 2 was worth par, and his responsible offer September 9, 1903, to buy all offered at that rate; and so on. Some of the evidence received is of a high and some of a low valuation; part is remote and of little evidential bearing, and part directly in point. We have considered it all, including that upon which the conclusion below was based, and are of the opinion that, after allowance for the incumbrances, the value of the equity in the tangible and intangible consolidated properties of Union Company No. 2 immediately after the consolidation was $7,500,000.

[3] The stockholders of the Edison Company were entitled to 43 per cent. of the value—$3,225,000. We think the master correctly determined the relative values of the preferred and common shares of the Edison Company; that is, that a preferred share was worth twice as much as a common share. That was the equation fixed by those who managed the consolidation. The result is an assignment of $2,150,000

to the 20,000 shares of Edison Company preferred stock, or $107.50 per share. The appellants own in varying amounts 3,179 of those shares. They were deprived of their rights September 9, 1903, and are entitled to interest from that time at 6 per cent. per annum. Having regard to the nature of the case and the principle of the recovery, we see no reason for a rate of interest greater than that prescribed by statute, for annual rests in the computation, for awarding counsel fees and expenses upon the basis of a recovery of $3,225,000 in the name of the Edison Company, nor for contribution thereto by others than appellants. The Edison Company is not restored or rehabilitated, and the ascertainment of the proportion to be assigned to it of the value of the consolidated properties is but a step in the process of determining the individual rights of appellants. Since Union Company No. 2 is not to be charged with appellants' counsel fees and expenses it is not concerned with the matter; but at the instance of appellants and at their cost the amounts may be judicially ascertained to the date of the decree and paid from the gross amount of recovery before distribution. We cannot say the findings below upon this matter are erroneous, but as the amounts were as of the time of hearing before the master, they should be brought by further proof to the date of the decree, so that what has since occurred shall receive consideration.

The decree below is reversed, and the cause is remanded, with directions to enter a decree, in accordance with the foregoing opinion, for a recovery by appellants from the consolidated Union Electric Light & Power Company of September 9, 1903, of amounts determined by the number of their shares of stock in the Missouri-Edison Electric Company at $107.50 per share, with interest thereon from September 9, 1903, at the rate of 6 per cent. per annum, and costs, excepting those incurred in the matter of appellants' counsel fees and expenses, adjudging the recovery, with interest and costs, to be a lien upon the property of the said consolidated company, fixing some short time for payment, and providing that upon default the property be sold to satisfy the decree; also to find the amounts of appellants' counsel fees and expenses, and to provide in the decree for the payment thereof and of the costs incurred in that matter from the gross recovery; and for the distribution of the balance among the appellants in proportion to their respective stockholdings upon surrender of their certificates of stock for the use of the consolidated company.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes