THOMPSON et al. v. BOMAR et al.*

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919.)

No. 5276.

ATTORNEY AND CLIENT ☞141—FEES—ALLOWANCE.

Where, in a suit in which the minority stockholders were successful, the final decree provided that the compensation fund reserved should be apportioned between the various solicitors, *held*, that the counsel who first protested against the action of the majority and brought suit in the state courts were entitled to compensation for their services in connection with such suit, though the litigation in which the minority shareholders were finally successful was in the federal courts, so that such counsel were entitled to $45,600 out of the entire fund of $104,299.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

William B. and Ford W. Thompson appeal from a decree in favor of Anna E. Bomar and others, assessing attorney's fees among counsel for the minority stockholders of the Missouri-Edison Electric Company and others in the case of Jones v. Missouri-Edison Electric Co. et al. Reversed and remanded, with instructions.

Ford W. Thompson and Paul Bakewell, both of St. Louis, Mo., for appellants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 30, 1919.

Daniel G. Taylor, of St. Louis, Mo. (Jacob Chasnoff and George C. Willson, both of St. Louis, Mo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree of the District Court, which determined the distribution of $104,299.15 among the counsel for the minority stockholders of the Missouri-Edison Electric Company, according to the value of their respective services in the litigation which those stockholders have had with the Union Electric Light & Power Company and others, which first appeared in this court in 1905 under the title of Jones v. Missouri-Edison Electric Co. et al., 144 Fed. 765, 75 C. C. A. 631, and which resulted in a final decree in their favor in the court below for $609,400.80 in 1916. The purpose of that litigation was to avoid the practical consolidation of the Missouri-Edison Electric Company, a corporation, together with the Union Electric Light & Power Company, another corporation, into the Consolidated Union Electric Light & Power Company, or to secure and recover from the defendants the value of the stock of these minority stockholders. This litigation was commenced by Mr. W. B. Thompson on behalf of his client, Mr. Frank A. Ruf, and all other minority stockholders similarly situated, on September 8, 1903. On that day at the meeting of the stockholders of the Edison Company, he protested on behalf of his client against the proposed consolidation, and on the same day brought a suit for Mr. Ruf, the owner of 1,160 shares of the preferred stock of the Edison Company, to prevent the consolidation by an injunction, and for other appropriate relief. That suit was brought in one of the state courts in the state of Missouri. An amended complaint therein was filed in November, 1913, depositions were taken, and it was prosecuted until after the decision of this court on April 17, 1916, overruling the demurrer to the complaint in the subsequent suit brought by Mr. Jones. After that decision Mr. Ruf dismissed his suit in the state court and intervened in the Jones suit in the court below. About the time Mr. Thompson commenced the Ruf suit, Mr. Morgan Jones, the owner of 1,002 shares of the preferred stock of the Edison Company, employed Mr. Eleneious Smith of St. Louis, and Mr. David T. Bomar and his brother, J. E. Bomar, of Texas, to examine his rights in this matter, and to take such action as they should advise in view of the practical consolidation, which the majority of the stockholders of the Edison Company were effecting. Messrs. Smith and Bomar, or one of them, consulted with Thompson immediately after he commenced his Ruf suit, and he gave them copies of his pleadings in that case and all the facts and law he knew, with reference to the rights of these minority stockholders. In April, 1904, after repeated consultations between Mr. W. B. Thompson and counsel for Mr. Jones, the latter brought the Jones suit in the federal court. The theory of the latter suit was the same as was that of the suit brought by Mr. Thompson for Ruf in September, 1903. Each suit rested upon the same facts and the same law, and each suit

was brought by the plaintiff therein on behalf of himself and all others similarly situated.

Mr. W. B. Thompson and his son, Mr. Ford W. Thompson, had law offices and were practicing law in the city of St. Louis in 1903, and they are still so doing, and from the commencement of the Ruf suit to the entry of the final decree in the Jones suit they were active and efficient in the conception, commencement, and conduct of this litigation to its successful result. From the early autumn of 1903, when they commenced the Ruf suit, until the final decree, they and the solicitors for Mr. Jones consulted together, searched out, and proved the necessary facts, and demonstrated the law which brought them success. In the autumn of 1904 Mr. Smith invited Mr. Ford W. Thompson into the Jones suit, and he accepted the invitation and served therein. In the course of the litigation many solicitors were employed on behalf of Mr. Jones for portions of the time, but the Thompsons served from its beginning to its end.

By the final decree, and pursuant to the agreement of all parties and their solicitors, there was retained in the court below for solicitors' fees, in addition to the sum of $4,209.15 that had been paid by Mr. Jones and some of the interveners to his solicitors, and in addition to the sum of $4,320, that had been paid by Mr. Ruf to his solicitors, the Thompsons, $95,770, making an aggregate of $104,299.-15, which was agreed to be the fair and reasonable compensation for the services of all the solicitors in the case and the court in its final decree further found:

"That counsel for complainant and interveners have agreed that the amount retained in court for solicitors' fees and said sum of $8,529.15 shall be apportioned between William B. and Ford W. Thompson, Eleneious Smith, Douglas W. Robert, and David T. Bomar, according to the amount and value of the services by them herein rendered, respectively."

No controversy arose between Messrs. Smith, Robert, and Bomar under this agreement and finding as to the relative amount and value of the services rendered as between themselves, nor as to their rights as against each other to share equally in the funds, but they argued that the amounts and values of their services were such that they were entitled to 75 per cent. and the Thompsons to 25 per cent. of the fund, while the Thompsons insisted that the services of Messrs. Smith, Robert, and Bomar were relatively of no greater value than their own, and that a just distribution of the fund would send 50 per cent. of it to them and 50 per cent. of it to the Thompsons. This controversy was referred to Hon. F. L. Schofield, the special master, who made a report, which the court below confirmed, and upon which it founded the decree which is here challenged by the appeal of the Thompsons.

In reaching his conclusions the master divided the time during which the services of counsel were rendered into three periods and found: (1) The percentage of the amount and value of all the services rendered during the entire litigation that was rendered in each of these periods; and (2) the percentage of all the services rendered in each period that was rendered by the Thompsons, on the one hand, and by the other solicitors, on the other.

His first period extends from the employment of counsel in September, 1903, until the overruling of the demurrer to the complaint in the Jones suit by this court on April 17, 1906, and he found that 28 per cent. of the amount and value of the services of all the solicitors was rendered in this period, and that the Thompsons rendered 18 per cent. of this 28 per cent. and the other solicitors rendered 82 per cent. thereof.

The second period extends from April 17, 1906, to April, 1913, and includes the services rendered in procuring the decisions of this court disclosed in its opinions in 199 Fed. 64, 117 C. C. A. 442, and 203 Fed. 945, 122 C. C. A. 247, and he found that 38 per cent. of the amount and value of all the services of all the solicitors was rendered in this period, and that the Thompsons rendered 37 per cent. of this 38 per cent. and the other solicitors rendered 63 per cent. thereof.

His third period extends from the end of the second period to the entry of the final decree, and includes the services rendered in procuring the decisions of this court set forth in its opinion in 233 Fed. 49, 147 C. C. A. 119, and the final decree pursuant thereto; and he found that 34 per cent. of the amount and value of the services of all the solicitors was rendered in this period, that the Thompsons rendered 31 per cent. of this 34 per cent. and the other solicitors 69 per cent. thereof.

At the end of his report the special master added the statement that in his opinion the Thompsons were not entitled to receive credit in the accounting for services performed by Mr. W. B. Thompson in the preparation of the pleadings and in the conduct of the Ruf Case in the state court, that he had given them no credit therefor, and that if he was in error in this conclusion the Thompsons would be entitled to a larger proportion of the compensation set apart for the first period.

The question in this case is a narrow one. It is: What proportion of the amount and value of all the services of all the solicitors engaged in the litigation, which resulted in the final decree in the Morgan Jones suit, did W. B. and Ford W. Thompson render? For it goes without saying, that they ought to receive the same proportion of the fund of $104,299.15 reserved to pay for those services. The length of time this litigation continued, the importance of some of the questions of law argued and adjudged, the multitude of the issues of law involved, the vast volume of evidence adduced and of briefs and arguments presented in the long course of the litigation, make it impossible to state or review them within the permissible limits of an opinion of this court. Nor would such a review serve any good purpose, for there is no question of law involved now, and the decisions of the questions of fact can never form precedents for future decisions, because no later case will present the same or similar facts. Moreover, the right answer to the question at issue is not susceptible to such an exact determination or demonstration as is an answer to a solvable mathematical problem. It is, after all the evidence, the arguments, and briefs have been read, analyzed, and thoughtfully considered, a matter of opinion or judgment. In view of this situation, no attempt will be made to state the facts or arguments which condition the conclu-

sion in this case. Suffice it to say that each of the members of this court, after a thoughtful and careful examination of the evidence, briefs, and arguments, without consideration or discussion with each other, concluded, and at the first consultation reported, that in his opinion the Thompsons ought to receive a certain amount out of the $104,299.15, and neither of these amounts differed more than $2,500 from either of the others. Subsequent conferences, discussions, and deliberations have resulted in these conclusions of the court.

The entire litigation, from September, 1903, when W. B. Thompson filed his complaint in the Ruf suit until the final decree in the Jones suit, was one case, upon one cause of action, the case of the minority stockholders of the Edison Company against the majority stockholders thereof and the Consolidated Union Company they used to deprive the minority of the real value of their stock. Ruf and Jones each brought his suit, not only for his own benefit, but also for the benefit of all the other minority stockholders similarly situated. W. B. Thompson first conceived and commenced this litigation on behalf of his client, Ruf, on September 8, 1903. On that day, at the meeting of the stockholders of the Edison Company, he protested for Ruf against the passage of the resolution for the consolidation, and filed the Ruf complaint for an injunction against this consolidation and for other appropriate relief. On October 6, 1903, he had prepared his amended petition in that suit. On October 13, 1903, Mr. Bomar and Mr. Jones obtained from him a copy of that amended petition. On November 11, 1903, Mr. Thompson filed Ruf's amended petition. During the time between October 13, 1903, and the final decree in 1916, the other solicitors in this litigation consulted with the Thompsons and worked together with them, gathering proof of the facts and legal precedents, to sustain this case. On April 1, 1904, Jones' solicitors filed his complaint in the court below. A demurrer was filed and sustained in the state court to the complaint of Ruf, and a demurrer was filed and sustained in the United States District Court to the complaint of Jones. From the order sustaining the demurrer in the latter case an appeal was taken to this court. Mr. Smith and Mr. Ford W. Thompson together prepared the brief, and Mr. Smith opened and Mr. Ford W. Thompson closed the argument on that appeal in this court, and this brief and these arguments resulted in the reversal of the order below and the declaration of the equitable principles upon which the case of the minority stockholders was won.

It is by no means certain that Mr. Jones would ever have brought his suit, or taken any effective steps toward bringing it, if he and his solicitors had not been awakened and encouraged to do so by Mr. W. B. Thompson's protest, his suit for Mr. Ruf, his knowledge of facts, and his confidence in the law, which he communicated to Mr. Jones and his solicitors. It was Mr. W. B. Thompson who first conceived, commenced, and led in the beginning of this litigation, while Jones and his solicitors followed.

Mr. Ruf had 1,160 shares and Mr. Jones had 1,002 shares of the stock of the Edison Company, and they contributed to the fund for the compensation of all the solicitors $107.50 per share. As Ruf had

more shares than Jones, he contributed more to the fund. Ruf had paid the Thompsons $4,320 on account of their services in the Ruf and the Jones suits before the agreement and decree regarding the compensation fund were made, and the Thompsons contributed $4,320 to the fund of $104.299.15. Jones and some of the interveners had paid $4,209 to their solicitors, and those solicitors contributed that amount to this fund. By the final decree Ruf received $220,632 and Jones $190,580.40. So it appears that the interest of Mr. Ruf, the client of the Thompsons in the litigation, and his contribution to the compensation fund, were not less than the interest and the contribution of Mr. Jones and the interveners with him. The finding of the court in the final decree was that this compensation fund should "be apportioned between Wm. B. and Ford W. Thompson, Eleneious Smith, Douglas W. Robert, and David T. Bomar, according to the amount and value of the services by them herein rendered, respectively." The record in this case discloses the fact that the master, in his consideration and determination of the proportions of the fund which Messrs. Smith, Robert, and Bomar had received under this agreement and finding, credited them with the services of Mr. J. E. Bomar and Mr. Edward Robert, who rendered services for the minority stockholders during the litigation, although their names are not mentioned in the agreement or finding, and in view of the facts which have now been recited, and upon a consideration of all the evidence, no doubt remains that the master and the court fell into an ereror in their refusal to consider or give any credit to the Thompsons in this accounting on account of the amount and value of the services of Mr. W. B. Thompson and Mr. Ford W. Thompson in the Ruf suit. It is clear to our minds that it was the intention of the counsel who made the agreement of apportionment that all the services of all the counsel who served in this litigation, including the services of Messrs. W. B. and Ford W. Thompson in the Ruf suit, should be considered in the accounting and apportionment, and when this agreement and the finding of the court in which it is embodied are read in the light of the circumstances surrounding the parties when they made it, this intention is clearly expressed in the contract.

The crucial period in this litigation was the first period. Then it was that all was at stake. After that the only question was how much should be recovered. The extent of the fiduciary relation and liability of the majority stockholders and those claiming under them to minority stockholders was not as well known and as clearly set forth in the decisions of the courts in 1903 as it is in 1919. The trial courts in this litigation held that the complaints in the Ruf and Jones suits stated no cause of action. The product of the ability, learning, and labor that persuaded a reversal of that conclusion and established the law which assured a recovery for these minority stockholders was little, if any, less valuable to them in this case than all the services of counsel subsequently rendered. Nor, in view of the facts which have been recited, and especially of the facts that W. B. Thompson first conceived and commenced the litigation, that he led where others followed, that Smith and Bomar constantly counseled and labored with

him and with his son throughout this first period, that they never succeeded in obtaining a decision that their suit could be maintained until Mr. Smith and Mr. Ford W. Thompson together, after each searching and reviewing the authorities and then combining their knowledge and their ability, prepared the brief and made the arguments which gave them the decision of this court of April 17, 1906, can the conviction be resisted that the amount and value of the services of the Thompsons, during this period, were equal to those of Mr. Smith and the Bomars. A careful study of the records, briefs, and arguments relating to the two other periods were necessary and were made before reaching these conclusions, and the other requisite changes in the apportionment of the fund that in the opinion of the court are deemed just.

The sum of the whole matter is that this court is of the opinion that the following changes in the percentages and proportions used by the special master and the court below should be made: First, that the percentage of the amount and value of the services of all the solicitors rendered in the first period should be 45, instead of 28, and that the percentage of this 45 per cent. rendered by the Thompsons during this period should be 50 per cent., instead of 18 per cent., making the Thompsons' share of the compensation fund for their services during the first period $23,467.30; second, that the percentage of the amount and value of the services of all the solicitors rendered in the second period should remain 38 per cent., and that the percentage of this 38 per cent. rendered by the Thompsons during this period should be 42 per cent., instead of 37 per cent., making the Thompsons' share of the compensation fund for their services during the second period $16,646.14; third, that the percentage of the amount and value of the services of all the solicitors rendered in the third period should be 17 per cent., instead of 34 per cent., and that the percentage of this 17 per cent. rendered by the Thompsons should remain 31 per cent. as it is, making the Thompsons' share of the compensation fund for their services during the third period $5,496.56, so that the Thompsons' share of the entire fund of $104,299.15 shall be $45,610.01, while the share of all the other solicitors shall be $58,689.14.

Let the decree below be reversed, and let this cause be remanded to the court below, with instructions to enter a decree in accordance with the views expressed in this opinion.