Henry G. Bauman, Mrs. Phyllis Bauman, William M. Michalski, and Norman Schwartz, Plaintiffs-Appellants, v. Advance Aluminum Castings Corporation, an Illinois Corporation, Defendant-Appellee.

Gen. No. 47,909.

First District, Third Division.

September 14, 1960.

179

Schultz and Brunswick, of Blue Island (Joseph E. Brunswick, of counsel) for appellants.

Bobb, Spoerri, Harris, and Nagel, of Chicago (James F. Spoerri, of counsel) for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken by Henry G. Bauman, Mrs. Phyllis Bauman, William M. Michalski and Norman Schwartz (hereafter referred to as plaintiffs) from a judgment order entered by the trial court on May 26, 1959 determining the fair value of common stock of the Advance Aluminum Castings Corporation (hereafter referred to as defendant), in a declaratory judgment action brought by plaintiffs, who were shareholders, under section 73 of the Business Corporation Act (Ill. Rev. Stat. 1957, chap. 32, par. 157.73). The case was heard, pursuant to stipulation, on the pleadings as amended, interrogatories and answers, and "any statement of fact to be made by counsel with respect to events subsequent to the filing of the suit which may have the effect in the opinion of counsel of altering the facts as they would appear to be presented to the court

by the aforesaid pleadings, interrogatories and answers." The court found the fair value of the shares of the stock of the defendant to have been $11.50 per share on April 1, 1958 and that the plaintiffs are entitled to judgment with interest to May 11, 1959. It ordered the cancellation of the shares of the plaintiffs and directed the plaintiffs to surrender their shares and authorized the deposit of funds by the defendant with the clerk of the court. Thereafter the court denied a motion by the plaintiffs to vacate the said order, and, after defendant had deposited sufficient funds with the clerk of the court, entered a further order declaring the judgment satisfied and discharged.

The plaintiffs here complain that the court erred in its finding as to value, that the court exceeded its statutory power in entering a judgment order over the objection of plaintiffs ordering the surrender of plaintiffs' certificates, directing the deposit of funds and in declaring the judgment satisfied and discharged, and that the court computed the interest improperly.

From the record it appears that on April 2, 1958, at the annual meeting of shareholders it was voted by more than two-thirds of the shareholders that the assets of the company be sold. The plaintiffs dissented to the action and pursued the remedy provided by section 73. All the provisions of the statute with reference to notice were complied with, and within the time limitation set by the statute the plaintiffs filed their action requesting that the court determine the fair value of their shares, the defendant having offered $10.00 a share, the plaintiffs requesting $13.00.

In its answers to interrogatories the defendant stated that the only business it was in on April 1, 1958 was the collection of its outstanding accounts and disposition of its inventories and fixed assets. The defendant stated that it had no present plans except to achieve the sale or other disposition of its assets and

181

to seek other means to carry on the company. The defendant, in answer to an interrogatory concerning its assets and liabilities, filed a balance sheet which had been made out March 22, 1958, and further stated that the assets and liabilities would be adversely affected in liquidation and collection. The defendant stated that on April 1, 1958 there were 168,042 shares of stock outstanding and that it had purchased 3,042 shares from all dissenting shareholders except plaintiffs. The number of shares owned by plaintiffs total 1460. The stock of the defendant was listed on the Midwest Exchange, and the market price on that exchange on April 1, 1958 was $8.00 per share.

The defendant on February 19, 1959 filed an amendment and supplement to its answer, setting up that on November 21, 1958 the corporation by resolution adopted a plan of partial liquidation, amended its articles of incorporation and reduced its outstanding shares; that on December 12, 1958 defendant mailed to all stockholders a letter advising them of the effectiveness of the plan of liquidation and submitted forms of letters of transmittal by which stockholders might deposit their certificates for surrender under the plan and get cash or new certificates and cash pursuant to the plan and amendment; that by the said plan and amendment the number of outstanding shares of defendant was reduced from 165,000 to 33,000 shares of $5.00 par value, by the cancellation of four-fifths of the shares held by each shareholder and payment of the sum of $10.00 for each share cancelled upon surrender of certificates for said shares. Attached to the answer were certain exhibits including the notice of the special meeting, the amendment to the charter, the letter of November 28, 1958 to shareholders, a balance sheet of October 25, 1958, a statement of earnings as of October 25, 1958, and a letter to shareholders dated December 12, 1958.

Except where a statute provided otherwise, in order for a corporation to do certain things, such as consolidation or merger or transfer of all corporate assets, etc., the unanimous consent of the stockholders was necessary. These restrictions were not in accord with modern needs and hence statutes were passed permitting the corporation, upon a vote of at least a majority of the stockholders, to perform such corporate acts. "In enacting such statutes, however, it was realized that it was necessary to afford some relief to dissenters, with the result that in most jurisdictions statutes were enacted which give the dissenters the right to receive the cash value of their stock and provide for an appraisal where no agreement as to value can be reached." 13 Fletcher Cyclopedia Corporations, sec. 5891.

Section 72 of the Illinois Business Corporation Act requires the affirmative vote of the holders of at least two-thirds of the outstanding shares to authorize the sale of assets here involved. Section 73, under which this action is brought, provides:

". . . the dissenting shareholder may . . . file a complaint . . . asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the corporation for the amount of such fair value as of the day prior to the date on which such vote was taken . . . . The practice, procedure, and judgment shall be governed by the Civil Practice Act of this State. The judgment shall be payable only upon and simultaneously with the surrender to the corporation of the certificate or certificates representing said shares. Upon the payment of the judgment, the dissenting shareholder shall cease to have any interest in such shares or in the corporation. . . ."

183

■ The plaintiffs take the view that under section 73 they had the privilege of going forward and having judgment entered, but that they could, after trial and finding, abandon the proceedings and the court would then be left without the power to enter judgment. In our opinion this position is untenable. The statute specifically provides that the proceedings under section 73 shall be in accordance with the Civil Practice Act. Section 52 of the Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 52) limits a plaintiff's right to voluntary dismissal of his suit, providing that after the trial or hearing begins the plaintiff cannot dismiss except by consent or on motion specifying the grounds for dismissal, supported by affidavit, and then he can only dismiss upon terms to be fixed by the court and the dismissal is a matter within the court's discretion. A further objection to the plaintiffs' contention is that if it were true that they could, after the court made a finding as to the value of their stock, bar a judgment and dismiss the suit, such action would seriously impede the remedial features of the Act permitting the corporation by two-thirds vote to sell its assets, etc. A sounder view is that section 73 gives an election to the dissenting stockholder. He may accept the method agreed to by the two-thirds majority for retiring his stock or he may proceed under section 73, but once having made such an election by commencing suit, he is bound to carry his suit through to a legal conclusion and he cannot dismiss his suit and resume his status as a stockholder. Johnson v. Baldwin, 221 S. C. 141, 69 S.E.2d 585, 591, 592; Southern Production Co., Inc., v. Sabath, 87 A.2d 128 (Del.).

■ ■ The plaintiffs also contend that the trial court erred in providing in its judgment order for cancellation of the shares owned by the plaintiffs and in ordering them to surrender such shares to the defendant for cancellation upon payment to the plaintiffs of

$11.50 per share, plus interest, and in further providing that in case the shares are not delivered by the plaintiffs and paid for by the defendants forthwith the defendant may deposit with the clerk of the court checks payable to the plaintiffs in the amounts found in the judgment, to be delivered to plaintiffs on their deposit of the certificates, and that the plaintiffs cannot deal with the certificates in any other manner than to deposit them with the clerk of the court, which certificates will thereupon be delivered by the clerk to the defendant. The plaintiffs brought an action for declaratory judgment. In their complaint they pray that the court declare the fair value of the shares of the defendant corporation pursuant to statute and "these Plaintiffs further pray that the court enter such orders in accordance with the Statutes applicable to this action as justice may require." The statute in question has a twofold purpose: to facilitate sale of assets, merger, etc. of a corporation by a two-thirds vote of the stockholders, and to protect the interests of the minority dissenting stockholders. Stiles v. Aluminum Products Co., 338 Ill. App. 48, 86 N.E.2d 887. In order to carry out the purpose of the statute it is our opinion that the court had the right to enter the order complained of.

The plaintiffs further argue that the trial court improperly valued the shares of the corporation as of April 1, 1958 at $11.50 per share. There is no case in Illinois or elsewhere dealing with the method of valuation of shares of a corporation which is nonactive and in the process of liquidation. The case of Ahlenius v. Bunn & Humphreys, Inc., 358 Ill. 155, 192 N. E. 824, is cited by both plaintiffs and defendant. In that case the court discusses the elements which may be considered in determining fair value of stock of an active, going corporation. Many of the elements mentioned in that case are not applicable here because of the dif-

185

ference in the corporation's status. The plaintiffs insist that the trial court should have determined the fair value of the stock solely on asset value and that, as the defendant in answering the interrogatories of the plaintiffs with reference to the assets and liabilities of the company filed a balance sheet, the book value therein reflected must be used by the court and the court should not have gone outside of the book value. They conclude that, taking the book value of the assets as reflected in the balance sheet and dividing it by the number of outstanding shares, the price should be $14.43 per share.

In the Ahlenius case the court states that the method of appraisal of the shares of dissenting stockholders has not been passed upon in Illinois and in other jurisdictions under similar statutes it has been passed on seldom. The court holds that the book value of the shares is not governing in determining their fair value. In Walker v. People, 192 Ill. 106, 61 N. E. 489, a case in which the court discusses the method of arriving at the value of shares of stock in corporations under the inheritance tax law which provided that the stock should be valued at the fair cash market value, the court says: "In arriving at the fair value of property, the appraiser, under the act, has to be guided by the fair market value thereof, and in ascertaining the same is authorized to call witnesses for that purpose. Under the act the appraiser and the county judge and the county court are not limited in the valuation of property to the market quotations of the same, but, for the purpose of finding the fair cash value of the same, they may use the quotations of the same on the public exchanges, private sales of such property, testimony as to the actual value of the same, and their own knowledge of the subject matter." In the Ahlenius case the court says: "Precise rules for determining the

186

value, whatever the descriptive term used, cannot be laid down. (Matter of Fulton, 257 N. Y. 487, 178 N. E. 766.) The very nature of most cases precludes proof of value and damage with the precision of mathematical computation. A situation is presented which calls for the exercise of judgment upon consideration of every relevant evidential fact and circumstance entering into the value of the corporate property and reflecting itself in the worth of corporate stock. (Jones v. Missouri-Edison Electric Co., 233 Fed. 49.)" Perfection in valuation, much as it is to be desired, is impractical of achievement.

██ In the instant case the two elements which could properly have been considered by the court are the market value of the shares and the asset value. No evidence was taken concerning the asset value except that the balance sheet reflecting the book value was presented to the court, together with a considerable amount of material indicating that the book value might properly be reduced because of the fact of the impending liquidation with the uncertainties inherent therein. In determining the value of the stock on April 1, 1958 ordinarily the court would consider evidence prior to that date. However, in this particular case it is worthy of note that on February 19, 1959 the defendant filed an amendment and supplement to its answer, without objection, in which acts of the corporation subsequent to April 1, 1958 were set out, and by the stipulation entered into between the parties on February 20, 1959, subsequent to the filing of the amendment to the answer, it was provided that the parties would submit briefs, that no evidence will be heard or introduced other than the pleadings, interrogatories and answers, including the amendment and supplement to defendant's answer, and "any statement of fact to be made by counsel with respect to events

187

subsequent to the filing of the suit which may have the effect, in the opinion of counsel, of altering the facts as they would appear to be presented to the court by the aforesaid pleadings, interrogatories and answers." In the court's order of May 26, 1959 the court states: "This case having come on to be heard upon the pleadings, stipulations of counsel and written briefs and arguments . . . ." There is no report of proceedings in the record before us. However, in the praecipe for record a request was made for a report of proceedings. We do not know what statements, if any, authorized by the stipulation, were made to the court at the time of the hearing. In their motion to vacate the judgment order of the court the plaintiffs state, among other things, that the court erred in its finding in that it based its decision on the September 27, 1958 statements of defendant and not on the April 1, 1958 figures as required by statute. We have been unable to find in the record any statement dated September 27, 1958. Yet such a statement might have been, at the hearing, properly submitted to the court under the very broad stipulation. Under the circumstances we must assume that the court had before it sufficient evidence to support its finding, and in any case, considering the entire record before us, the court's finding is based on a reasonable conclusion from the evidence.

■ ■ Plaintiffs also urge that the court erred in computing the interest from April 1, 1958 to May 11, 1959. They contend that interest should be computed to the date of entry of the judgment. The judgment order of the court was entered May 26, 1959, but in that order the court recites that "this case having come on to be heard . . . the Court having fully considered the matter and rendered its opinion herein; NOW THEREFORE, IT IS HEREBY . . . DE-

CREED . . . ." It is not an uncommon practice for the court to announce its judgment from the bench and suggest that an order or decree be prepared in accordance therewith. We are aware of the fact that if this is a case in equity the decree therein properly dates from its date of entry. However, the proceeding before us is a complaint seeking a declaratory judgment, is sui generis, and cannot be said to be a suit at law or in equity. But even in an equity case where the court has stated its finding and fixed the date on which it made its statement as the date to which interest shall run, we feel that opposing counsel are bound by that order.

The judgment of the Superior Court is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.