JUNE STANTON *et al.*, Plaintiffs-Appellants, v. REPUBLIC BANK OF SOUTH CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—2642

Opinion filed August 27, 1990.

John R. O'Brien, P.C., of Chicago, for appellants.

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Charles R. McKirdy, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This is an interlocutory appeal from the order of the circuit court entering partial summary judgment against dissenting shareholders to a bank merger in their action seeking the recovery of dividends and the fair value of their shares. The sole issue presented for our review is whether dissenting shareholders to a bank merger are entitled under the Illinois Banking Act (the Act) (Ill. Rev. Stat. 1987, ch. 17, par. 301 *et seq.*) to receive stock dividends declared and paid between the merger date and the date upon which the fair value of the dissenting shareholders' shares is determined by judicial proceedings.

Following the effective date of the merger between South Chicago Savings Bank and the newly formed banking corporation known as Republic Bank of South Chicago[1] (defendant), June Stanton, William P. Lloyd, Margaret C. Kenny, and John R. O'Brien (plaintiffs) perfected their rights as dissenting shareholders to the merger pursuant to the appraisal procedures afforded dissenting shareholders in section 29 of the Act (Ill. Rev. Stat. 1987, ch. 17, par. 336). Plaintiffs subsequently sought a judicial determination of the fair value of their shares as provided in the appraisal provision, and thereafter added a claim for the recovery of dividends declared and paid by defendant during the period subsequent to the merger and during the pendency of the valuation proceedings. In granting summary judgment to defendant on the latter claim, the circuit court held that the appraisal remedy afforded dissenting shareholders to a bank merger in section 29 of the Act does not entitle dissenting shareholders to dividends paid by the merged bank during the pendency of stock valuation proceedings subsequent to the merger.

Plaintiffs' position on appeal, as it was before the circuit court, is that dissenting shareholders to an Illinois bank merger retain the

---

[1]Following the merger, Republic Bank of South Chicago changed its name to South Chicago Savings Bank.

same interest in their shares and the continuing bank as other bank shareholders until they are paid the fair value of their shares, including the right to receive dividends. The converse position asserted by defendant is that dissenting bank stockholders who elect to pursue the statutory appraisal remedy surrender certain rights usually associated with stock ownership and are entitled only to the relief as specifically provided in the appraisal statute.

■■ The impetus for the enactment of appraisal statutes was the common law rule requiring the unanimous consent of stockholders to implement major corporate transactions, such as mergers or sales of substantially all the corporation's assets, and its resulting license to minority stockholders to maintain a tyrannical hold upon a corporation. (18A Am. Jur. 2d, *Corporations* §805 (1985); see *Johnson v. Baldwin* (1952), 221 S.C. 141, 69 S.E.2d 585; *Chicago Corp. v. Munds* (1934), 20 Del. Ch. 142, 172 A. 452; *Winfree v. Riverside Cotton Mills, Co.* (1912), 113 Va. 717, 75 S.E. 309.) Appraisal provisions, enacted in conjunction with provisions providing for less than an absolute majority to approve major corporate transactions, were the "bargained exchange" for abolition of the unanimous-consent requirement. As such, the provisions were intended to change the status of a dissenting shareholder to that of a creditor, thereby allowing the dissenter distributive rights superior to that of the remaining shareholders. 18A Am. Jur. 2d *Corporations* §805 (1985); see also *Flarsheim v. Twenty Five Thirty.Two Broadway Corp.* (Mo. 1968), 432 S.W.2d 245, 253, citing 13 Fletcher Cyclopedia of Corporations §5898; *Narragansett Electric Lighting Co. v. Sabre* (1929), 50 R.I. 288, 146 A. 777.

Like other appraisal statutes, section 29 of the Act provides specific procedures for the perfection of rights as a dissenting shareholder to a bank merger and for the valuation and payment of the dissenter's stock. Section 29 entitles a dissenting shareholder who follows certain procedures to "make written demand on the continuing bank for payment of the fair value of his shares as of the day prior to the date on which the vote was taken approving the merger" and provides that, upon agreement as to the value of such shares and the surrender of stock certificates, "payment *** shall be made within 90 days after the date on which such merger was effected." In the event no agreement is reached as to the fair value of the stock, "the dissenting stockholder may *** file a complaint in the circuit court asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the continuing bank for the amount of such fair value as of the day prior to the

date on which such vote was taken approving such merger with interest thereon to the date of such judgment." Ill. Rev. Stat. 1987, ch. 17, par. 336.

The language which plaintiffs maintain affords them the same post-merger, prepayment rights as other shareholders is that directly following the language permitting payment of fair value as agreed upon, and repeated following the language providing for payment of fair value as judicially determined:

> "Upon payment of the agreed value [or judgment] the dissenting stockholder shall cease to have any interest in such shares or in the continuing bank." (Ill. Rev. Stat. 1987, ch. 17, par. 336.)

Plaintiffs assert that the clear meaning of this language is that a dissenting shareholder continues his interest as a "shareholder" until he is paid the fair value of his shares. Conversely, defendant argues that, when read in conjunction with other portions of the provision, it is clear that "interest" refers to the previously afforded right to receive full value for the shares and that the statute affords the dissenting shareholder no other remedy.

■ In exercising our function of statutory interpretation to effectuate the intent of the legislature, we note that no legislative history exists as to this enactment since it was adopted at a referendum election and that no Illinois court has interpreted the provision as it relates to the issue before us. When faced with a statute which has not been judicially interpreted, a court must give the language its plain and ordinary meaning without resort to other construction aids, unless the legislative intent cannot thereby be ascertained due to ambiguity in its language. (*Trigg v. Sanders* (1987), 162 Ill. App. 3d 719, 515 N.E.2d 1367.) Where the proper interpretation of a statute cannot be based upon its language alone, the court is then guided by rules of statutory construction. The court must look to the entire statute and consider the reason and necessity of the law, the objective which the statute sought to accomplish, and the evils sought to be remedied. (*City of Decatur v. American Federation of State, County & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219; *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45.) The interpretation must be grounded on the nature, objects and the consequences that would result from the construction. *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 527 N.E.2d 1264.

■ We find the reference in the disputed language to "any interest" to be ambiguous and therefore are unable to ascertain the provi-

sion's intent from its plain and ordinary meaning. In reading section 29 in its entirety and in light of its objects and consequences, we believe the disputed language does not confer upon dissenting shareholders the same rights as other shareholders, but merely indicates that the rights previously afforded by the statute cease upon payment of the shares. By providing for the agreed-upon or adjudicated fair value to be determined *as of the date prior to the date on which the vote was taken approving the merger* and by providing for *interest from that date to the date of the judgment,* section 29 treats the dissenting stockholder as though he has sold his shares upon approval of the merger. The explicit triggering of the right to fair value and interest at this time in effect changes the dissenter's status from that of shareholder to that of a creditor. The provision then indicates that the dissenter's interest as such ceases upon payment.

As defendant argues, the practical effect of plaintiffs' interpretation would be to allow the dissenting stockholder a double recovery by giving the dissenter interest on the fair value of his stock as though the dissenter had sold the stock on the date of the merger *plus* dividends declared after the vote as though the dissenter had retained his stock. It would grant the dissenter the benefits of stock ownership in the form of dividends for a certain time period, without the dissenter having to bear the corresponding risk of facing a reduction in the value of the shares. The more reasonable interpretation is that the drafters intended to provide the dissenter with an opportunity to opt out of a merger at a fair price, with the consequence being that the stockholder surrenders the rights normally associated with stock ownership.

This conclusion is supported by the court's holding in *Bauman v. Advance Aluminum Castings Corp.* (1960), 27 Ill. App. 2d 178, 169 N.E.2d 382, in addressing the issue of whether a dissenter could dismiss his suit to determine the fair value of his shares under a virtually identical dissenter's rights provision in the former Illinois Business Corporation Act (Ill. Rev. Stat. 1957, ch. 32, par. 157.73). The court found that "once having made such an election by commencing suit, [the dissenter] is bound to carry his suit through to a legal conclusion and he cannot dismiss his suit and *resume his status as a stockholder.*" (Emphasis added.) *Bauman,* 27 Ill. App. 2d at 184, 169 N.E.2d at 385; see also *Flarsheim,* 432 S.W.2d at 253 (stating that the clear intent of the Missouri statute, patterned after the former Illinois Business Corporation Act, "is to change the status of a dissenting shareholder to that of a creditor at least superior to the distributive rights of the remaining shareholders").

Finally, we do not find persuasive plaintiffs' citation to numerous legislative enactments expressly providing for the termination of shareholders' rights on election to dissent to demonstrate that the omission of such an express provision here indicates an intent to retain all shareholder rights. It is noteworthy that none of these enactments provide stockholders with both the right to receive the fair value of their shares determined at the time of merger and post-merger dividends.[2] (See *Model Business Corp. Act, Annotated,* §74 (1st Ed. 1980); Ill. Rev. Stat. 1987, ch. 73, par. 779 (the Illinois Insurance Code); Ala. Code §§10—2A—163(a), (d), (e) (1989); Alaska Stat. §§10.06.576(e), 10.06.580(f); Ariz. Rev. Stat. Ann. §§10—081(I), (L) (O) (1988); Ind. Code §§28—1—7—21(a), (c) (1980); Fla. Stat. §607.247(3) (1988); Del. Code Ann. tit. 8, §262(K) (1975); Mass. Gen. L. ch. 156B §§86-98 (1988); Ark. Stat. Ann. §4—27—1323(B) (1989); Colo. Rev. Stat. §§7—4—123, 7—4—124 (1989).) In fact, plaintiffs have not cited a single jurisdiction which so provides. It is more logical to conclude that, since plaintiffs' interpretation would be a radical departure from other legislative provisions, the drafters would have expressly provided for such if they so intended.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.

---

[2]Plaintiffs cite statutes from two jurisdictions which provide that dissenters may receive dividends pending payment for their shares, but the dividends are to be credited against the amount due to the dissenters for the value of their shares. See Ohio Rev. Code Ann. §1701.85(E) (Baldwin (1989)); Cal. Corp. Code §§1307, 1308 (Deering 1989).